UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GAIL RUTHERFORD,<br><br>    Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; and EQUIFAX INFORMATION SERVICES, LLC,<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. § 1681** *et seq.* |

  Plaintiff Gail Rutherford ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, against Defendants Experian Information Solutions, Inc. ("Experian") and Equifax Information Services, LLC ("Equifax") (collectively referenced as the "CRA Defendants" or "Defendants").

## I.  INTRODUCTION

  1.  Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., against the CRA Defendants, each a consumer reporting agency, for reporting inaccurate information on Plaintiff's consumer report. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

1

## II. JURISDICTION AND VENUE

1. The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

2. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

3. Defendants transact business here; as such, personal jurisdiction is established.

## III. PARTIES

4. Plaintiff is a natural person residing in the city of Chicago, Illinois.

5. Plaintiff is a *consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

6. Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

7. Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309.

8. Upon information and belief, the CRA Defendants disburse consumer reports to third parties under contract for monetary compensation.

9. At all relevant times, the CRA Defendants acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

10. Any violations by the CRA Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and the CRA Defendants did not maintain procedures reasonably adapted to avoid any such violations.

## IV. FACTUAL BACKGROUND

11. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

12. The United States Congress decided that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

13. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

14. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

15. The CRA Defendants report consumer information about Plaintiff and other consumers through the sale of consumer reports.

16. The CRA Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's

name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information:</u> this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

17. The CRA Defendants obtain consumer information from various sources, including furnishers that provide consumer information to the CRAs, and information the CRAs independently source themselves or through third party providers, vendors or repositories, including computerized reporting services like PACER.

18. The diligence the CRA Defendants exercise in recording consumer bankruptcy filings is not replicated in their reporting of the effects of bankruptcy proceedings and orders upon certain accounts.

19. Consequently, the CRA Defendants routinely report inaccurate, incomplete, outdated, and materially misleading information about consumers after they have been discharged from bankruptcy, without verifying or updating the information as required by § 1681(e)(b), despite possessing information that indicates their reporting is inaccurate.

20. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions. Those institutions also use FICO Scores and other proprietary third-party algorithms (or "scoring" models) to interpret the information in a consumer's consumer report, which is based

on the amount of reported debt, payment history, and date of delinquencies contained in the CRA Defendants' reports.

21. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

22. The information reported by the CRA Defendants contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in the CRA Defendants' consumer reports.

23. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

24. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed.

25. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist.

26. The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

27. However, after a delinquent account has been remedied, a consumer's FICO score may increase so long as the account stays current.

28. The CRA Defendants voluntarily obtained Plaintiff's consumer bankruptcy information and reported it in individual account tradelines and the Public Records section of Plaintiff's consumer reports.

29. The CRA Defendants are well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts which are included in a bankruptcy.

30. The CRA Defendants are also aware that accounts opened after a bankruptcy petition is filed are not included in a bankruptcy.

31. CRAs may also be provided information about whether an account is included in a bankruptcy from information "furnishers" who report their accounts to the CRAs.

32. The CRA Defendants followed unreasonable procedures that allowed them to inaccurately report one of Plaintiff's accounts, despite possessing conflicting information about the account.

33. Rather than following reasonable procedures to assure maximum possible accuracy, the CRA Defendants inaccurately report information regarding post-bankruptcy debts even if that information ignores or contradicts information known and reported by the CRAs themselves.

34. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against the CRA Defendants for their inaccurate reporting following a consumer bankruptcy.

35. Therefore, the CRA Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, including those that result in inaccurate account and payment statuses, both before and after receiving a dispute from the consumer.

//

*Allegations Specific to the Credit Reporting of Plaintiff*

36. On February 9, 2021, Plaintiff filed for a voluntary bankruptcy under Chapter 7 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois, petition number 21-01729.

37. On February 11, 2021, Plaintiff obtained a Capital One credit card from Capital One ("the Account").

38. Plaintiff is current on her payments and does not owe a balance on the Account.

39. Plaintiff received a discharge in bankruptcy court in May 2021.

40. Plaintiff filed for bankruptcy to rebuild and improve her credit.

41. After Plaintiff's bankruptcy was discharged, Plaintiff was eager to obtain a "fresh start."

42. Sometime after Plaintiff's bankruptcy discharge, Plaintiff obtained her Experian, Equifax, and Trans Union consumer reports to ensure that her credit account tradelines and bankruptcy were being reported accurately.

43. Plaintiff learned the CRA Defendants were inaccurately reporting Plaintiff's Account as having been included in Plaintiff's bankruptcy, and subject to bankruptcy coding that conveys to creditors/lenders that the Account was discharged or non-current/non-paid even though Plaintiff opened the Account after the bankruptcy was filed and Plaintiff continued to make payments on the Account.

44. Plaintiff has made payments on the Account, and is current on the Account.

45. The Account was indisputably not discharged. Plaintiff opened the Account after her bankruptcy filing to rebuild/re-establish credit through timely monthly payments on the Account.

46. However, when Plaintiff pulled her consumer reports, she discovered that the CRA Defendants were not reporting the Account's accurate payment history.

47. The CRA Defendants' reporting was patently false and materially misleading, as the Account was not discharged by Plaintiff's bankruptcy.

48. The CRA Defendants' reporting was patently false and materially misleading, as Plaintiff continued to make timely monthly payments on the Account, which Plaintiff believes were also reported to the CRA Defendants.

49. The CRA Defendants failed to report the Account's accurate payment history and ongoing payments. In fact, Equifax reported a February 1, 2021 "first date of delinquency" for the Account even though it also reported that the Account was not opened until ten days later.

50. The CRA Defendants reported inaccurate payment statuses that indicate the Account was included in and/or discharged in bankruptcy, instead of open with a current status.

51. Notably, the other national consumer reporting agency, Trans Union, LLC, did not inaccurately report the Account like the CRA Defendants.

*Plaintiff's Damages*

52. Upon information and belief, had the CRA Defendants accurately reported the Account with its correct payment history and positive continuing payments, Plaintiff's credit scores would have been better.

53. After Plaintiff's bankruptcy discharge, Plaintiff applied for credit. Upon information and belief, Plaintiff's credit applications were denied due to the inaccurate reporting by the CRA Defendants.

54. The CRA Defendants' inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to creditors by the CRA Defendants during the process of Plaintiff's credit applications.

55. As a direct result of the CRA Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

56. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational damage, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

57. The CRA Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild her credit.

## V. COUNT I
## CRA Defendants
### (Violations of the FCRA, 15 U.S.C. § 1681 *et. seq.*)

58. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

59. The FCRA requires consumer reporting agencies, like the CRA Defendants, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

60. The CRA Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report.

61. Additionally, the CRA Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to report accurate information when placed on notice that the information Defendants are reporting is inaccurate, and/or otherwise contradicted by information known by Defendants or reasonably available to Defendants.

62. Upon information and belief, the CRA Defendants regularly conduct voluntary public records searches with the intention of including bankruptcy information on the consumer reports they sell to other parties.

63. Upon information and belief, the CRA Defendants voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge.

64. The CRA Defendants inaccurately reported Plaintiff's Account as included in Plaintiff's bankruptcy when they knew Plaintiff opened the Account after filing her bankruptcy petition; continued to make payments on the Account, and remained liable for the Account, which was not included in Plaintiff's discharge.

65. The CRA Defendants possessed information that indicated that the Account was not included in her bankruptcy.

66. The CRA Defendants knew or should have known of their obligations under the FCRA. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving the CRA Defendants from which they are on notice of their unreasonable procedures concerning the reporting of debts during and after bankruptcy.

67. The CRA Defendants failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by reporting the Account was included in Plaintiff's bankruptcy despite possessing conflicting information.

68. The CRA Defendants' acts, as described above, were done willfully and knowingly; or, alternatively were negligent.

69. The CRA Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

70. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denials, and other financial harm caused by the CRA Defendants inaccurately reporting that the Account was discharged in Plaintiff's bankruptcy, and otherwise failing to report that the debt was open and current.

71. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, loss of sleep and anxiety.

72. The CRA Defendants are a direct and proximate cause of Plaintiff's damages.

73. The CRA Defendants are a substantial factor in Plaintiff's damages.

74. Therefore, the CRA Defendants are individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681, *et seq*.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment be entered against the CRA Defendants for the following:

A. Declaratory judgment that the CRA Defendants violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Any pre-judgment and post-judgment interest as may be allowed under the law; and

G. Any other relief that this Court deems appropriate.

## VII. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

Respectfully submitted this 7th day of February 2022.

> */s/Michael J. Plati*
> Michael J. Plati, Esq.
> Bar Number: AZ 016705
> Price Law Group, APC
> 8245 N. 85th Way
> Scottsdale, AZ 85258
> Telephone: (818) 600-5561
> Email: plati@pricelawgroup.com
>
> Syed H. Hussain, Esq.
> Bar Number: Illinois 6331378
> Price Law Group, APC
> 420 E Waterside Dr #3004
> Chicago, IL 60601
> Telephone: (954) 225-4934
> Email: syed@pricelawgroup.com
> *Attorneys for Plaintiff Gail Rutherford*